IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

SEP 2 3 2010

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| SERGIO HERNANDEZ, | § § § § | |
| Plaintiff, | | |
| v. | § § § § § § | CIVIL ACTION NO. B-08-383 |
| HARVEST OIL & GAS, LLC, | | |
| Defendant. | | |

## MEMORANDUM OPINION AND ORDER

BE IT REMEMBERED, that on September 23, 2010, the Court considered Defendant Harvest Oil & Gas, LLC's Motion for Summary Judgment, Dkt. No. 35; Defendant Harvest Oil & Gas LLC's Motion to Dismiss, Dkt. No. 50; and Plaintiff Sergio Hernandez's Unopposed Motion to Strike Affidavit of Martin Sanders, Dkt. No. 40. Because the Court finds that Defendant has failed to meet its initial summary judgment burden and because disputes exist concerning genuine issues of material fact, the Court denies Defendant's dispositive motions.

I. Background

This lawsuit concerns injuries allegedly sustained by Plaintiff Sergio Hernandez while he worked as a welder aboard an oil drilling platform in the Gulf of Mexico. *See* Dkt. No. 10 at 2. In his Amended Complaint, Hernandez named two companies as defendants: Dynamic Industries, LLC ("Dynamic Industries"), his alleged employer, and Harvest Oil & Gas, LLC ("Harvest Oil"), the alleged owner of the platform on which Hernandez was injured. Dkt. No. 10 at 2. On April 30, 2009, Hernandez voluntarily dismissed Dynamic Industries from this lawsuit. *See* Dkt. Nos. 21–22.

Hernandez asserts claims "[u]nder the Jones Act and the general maritime law of the United States." Dkt. No. 10 at 1. According to his deposition testimony, Hernandez was injured when he climbed below the platform to install a ladder. *See*

1

Dkt. No. 35 Ex. A at 144:6–11. He avers that he slipped on the pipe on which he was standing and injured his back. *See id.* at 140:12–17; 179:15–180:6. In his responses to the motions presently before the Court, he has focused on the lack of scaffolding below the oil platform and asserted that Harvest Oil had a duty to turn over the platform on which he was working with scaffolding in place, to warn him of the platform's unreasonably unsafe condition, or to intervene to protect him from the danger. *See generally* Dkt. No. 42 at 2.

Harvest Oil timely filed a motion for summary judgment and a motion to dismiss.[1] Dkt. Nos. 35,[2] 50. It avers that Hernandez has abandoned his claim under the Jones Act, 46 U.S.C. app. § 688, because the platform on which he was injured was a fixed platform permanently attached to the seabed and therefore not a vessel as a matter of law – a required element of a Jones Act cause of action. *See* Dkt. No. 35 at 4–5. Harvest Oil also requests summary judgment on Hernandez's cause of action under the Longshoreman and Harbor Workers' Compensation Act (LHWCA), 43 U.S.C. § 1331 *et seq.*,[3] because it is not the owner of the platform on which Hernandez was injured and, in any event, it breached no duty it owed to Hernandez. *See* Dkt. No. 35 at 3.

Hernandez has responded with affidavits and depositions which it contends demonstrate the existence of material factual disputes concerning whether Harvest Oil owned the platform on which Hernandez was allegedly injured and whether Harvest Oil had sufficient control of the platform at the time of Hernandez's alleged injuries to be held liable. *See generally* Dkt. No. 42 at 6-7; Dkt. No. 52 at 3-4. Hernandez contends that this evidence creates a dispute concerning material facts requiring the court to deny summary judgment. *See ibid.*

---

[1] Hernandez has also moved to strike the affidavit of Martin Sanders attached to its Motion for Summary Judgment, Dkt. No. 35, as Exhibit D. Dkt. No. 40. As this motion is unopposed, the Court will grant it. *See* Dkt. No. 44 at 1. Consequently, the court does not rely on this affidavit in deciding Harvest Oil's motions for summary judgment.

[2] Harvest Oil apparently inadvertently filed its motion for summary judgment without exhibits and then quickly refiled the motion with exhibits the same day. *See* Dkt. Nos. 34, 35. The Court will cite to the latter motion in this Opinion and Order. Dkt. No. 35.

[3] Hernandez does not address Harvest Oil's arguments concerning its Jones Act claim. *See* Dkt. No. 42.

2

## II. Standard of Review

Harvest Oil has filed both a motion for summary judgment under Federal Rule of Civil Procedure 56, Dkt. No. 34, and a motion to dismiss this case under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 50. Hernandez argues that the latter motion must be denied as untimely because it was filed after Harvest Oil answered the complaint. *See* Dkt. No. 52 at 5.

It is true that the language of Rule 12(b) provides that motions like Harvest Oil's motion to dismiss "must be made before pleading if a responsive pleading is allowed." FED. R. CIV. P. 12(b) (2010); *but see id.* R. 12(h)–(i); Stearman v. C.I.R., 436 F.3d 533, 536 n.6 (5th Cir. 2006) (permitting use of 12(b)(6) motion at trial). Harvest Oil filed its 12(b)(6) motion on June 29, 2010, Dkt. No. 50, long after Harvest Oil answered the Amended Complaint. Dkt. No. 10. (answer filed Nov. 14, 2009). However, an untimely 12(b)(6) motion is not lost; it must be converted into a motion for judgment on the pleadings under Rule 12(c). Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999). The distinction, however, is purely semantic, for a Rule 12(c) motion for judgment on the pleadings is subjected to the same standard as a Rule 12(b)(6) motion. Great Plains Trust Co. v. Morgan Stanley Dean Witter, 313 F.3d 305, 313 n. 8 (5th Cir. 2002) (citing 5A Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1368 at 591 (Supp. 2002); Meredith v. Nowak, No. 06-2384, 2008 WL 4808905, at *2 (E.D. La. Oct 31, 2008). Moreover, because Harvest Oil asks the Court to rely on exhibits attached to its motion to dismiss, the court construes its motion to dismiss as a motion for summary judgment. *See* Fed. R. Civ. P. 12(d) (2010) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under rule 56.").

Consequently, the Court applies the standard applicable to a motion for summary judgment under Rule 56 to Harvest Oil's Motion for Summary Judgment, Dkt. No. 35, and Motion to Dismiss. Dkt. No. 50. Summary judgment is appropriate when the movant has established that the pleadings, affidavits, and other evidence available to the Court demonstrate that no genuine issue of material

fact exists, and the movant is thus entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006); *Lockett v. Wal-Mart Stores, Inc.*, 337 F. Supp. 2d 887, 891 (E.D. Tex. 2004). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant." *Piazza's Seafood World, LLC*, 448 F.3d at 752 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court must view all evidence in a light most favorable to the non-moving party. *Piazza's Seafood World, LLC*, 448 F.3d at 752; *Lockett*, 337 F. Supp. 2d at 891. Factual controversies must be resolved in favor of the non-movant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Thus, the Court will not, "*in the absence of proof, assume that the nonmoving party could or would prove the necessary facts.*" *Id.* (emphasis in original) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)); *see also TIG Ins. Co. v. Eagle, Inc.*, Civ. Action No. 05-0179, 2007 WL 861153, at *2 (E.D. La. 2007) (quoting *Little*, 36 F.3d at 1075), *rev'd on other grounds* 294 Fed. Appx. 920 (5th Cir. 2008).

The non-movant has no duty to respond to a motion for summary judgment until the moving party meets its burden of showing that no genuine issue of fact exists. *See Lockett*, 337 F. Supp. 2d at 891 (citing *Ashe v. Corley*, 992 F.2d 540, 543 (5th Cir. 1993)). However, if the movant satisfies its burden, the non-movant must then come forward with specific evidence to show that there is a genuine issue of fact. *Lockett*, 337 F. Supp. 2d at 891; *see also Ashe*, 992 F.2d at 543. The non-movant may not merely rely on conclusory allegations or the pleadings. *Lockett*, 337 F. Supp. 2d at 891. Rather, it must demonstrate specific facts identifying a genuine issue to be tried in order to avoid summary judgment. FED. R. CIV. P. 56(e); *Piazza's Seafood World, LLC*, 448 F.3d at 752; *Lockett*, 337 F. Supp. 2d at 891. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)). Thus, once it is

shown that a genuine issue of material fact does not exist, "[s]ummary judgment is appropriate . . . if the non-movant 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" Arbaugh v. Y&H Corp., 380 F.3d 219, 222–23 (5th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)), *rev'd on other grounds* 546 U.S. 500 (2006).

## III. Discussion

Hernandez begins his Amended Complaint with the statement that "[t]his claim is maintained under the Jones Act and/or the general maritime law of the United States." Dkt. No. 10 at 1 ¶ 1. He does not elaborate. In their summary judgment motions, the parties confine themselves to arguments concerning Hernandez's causes of action under the Jones Act, 46 U.S.C. app. § 688, and Section 905(b) of the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 905(b).

### A. *Jones Act Claim*

In order to recover under the Jones Act, a plaintiff must show that he is a "seaman in the course of his employment." 46 U.S.C. app. § 688 (2010). Seaman status has two essential elements: (1) "an employee's duties must contribut[e] to the function of the vessel or to the accomplishment of its mission" and (2) "a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." Harbor Tug & Barge Co. v. Papai, 520 U.S. 548, 554 (1997) (quoting Chandris, Inc. v. Latsis, 515 U.S. 347, 368 (1995)) (alterations in original). Harvest Oil's arguments concern the second element. According to Harvest Oil, Hernandez has no substantial connection to any vessel in navigation because the platform on which Hernandez was allegedly injured is not a vessel as a matter of law.[4] *See* Dkt. No. 35 at 4. In his responses to Harvest Oil's dispositive motions, Hernandez omits argument concerning his Jones Act claim. *See generally* Dkt. Nos. 42, 47, 52. Harvest Oil assigns to this omission the significance of a concession. *See* Dkt. No. 45 at 2. However, as already

---

[4] Like the parties, the court does not address the other elements of Hernandez's Jones Act claim because Harvest Oil has not placed them at issue in its motion for summary judgment.

explained, a non-movant has no obligation to respond to a motion for summary judgment until the movant has met its burden to show that no genuine dispute as to an issue of material fact exists and it is entitled to judgment as a matter of law. *See Lockett*, 337 F. Supp. 2d at 891 (citing Ashe v. Corley, 992 F.2d 540, 543 (5th Cir. 1993)).

Courts have long distinguished between work platforms and vessels by looking to the "importance of transportation as to the craft's purpose."[5] Fields v. Pool Offshore, Inc., 182 F.3d 353, 357 (5th Cir. 1999); *see also* Holmes v. Atl. Sounding Co., 437 F.3d 441, 446 (5th Cir. 2006) ("As a general principle, where the vessel status of an unconventional craft is unsettled, it is necessary to focus upon the purpose for which the craft is constructed and the business in which it is engaged.") (quoting Gremillion v. Gulf Coast Catering Co., 472 F.2d 999, 1002 (5th Cir. 1990)). While a three-part test must be used to separate vessels from work platforms, *see Fields,* 182 F.3d at 357–58, some general rules concerning offshore platforms have emerged. On the one hand, "fixed platforms are not vessels, and workers injured on them are covered under the LHWCA, not the Jones Act." Becker v. Tidewater, Inc., 335 F.3d 376, 391 (5th Cir. 2003) (citing Demette v. Falcon Drilling Co., 280 F.3d 492 (5th Cir. 2002), *overruled on other grounds* Grand Isle Shipyard, Inc. v. Seacor Marine, LLC, 589 F.3d 778 (5th cir. 2009 (en banc)); *see also* Rodrigue v. Aetna Cas. & Surety Co., 395 U.S. 352, 360 (1969). On the other hand, a person may be a seaman for Jones Act purposes if he is injured on a floating oil rig platform. *See* Herb's Welding, Inc. v. Gray, 470 U.S. 414, 416 n.2 (1985) (citations omitted). Moreover, the Fifth Circuit has applied these rules with differing results to a variety of at least somewhat mobile platforms used for natural resources exploration in the Gulf of Mexico with differing results. *Compare, e.g., Demette,* 280 F.3d at 495, 498, 503 (holding that "jack-up" rig which has legs that can be extended into the seabed but can be towed to new locations for drilling may

---

[5] A vessel is statutorily defined as "every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water." 1 U.S.C. § 3 (2010).

6

be vessel depending on whether or not it is jacked up) *with Fields*, 182 F.3d at 357–59 (holding that spar platform affixed to ocean floor by 180-foot pilings and which owner had no plans to move in foreseeable future was not vessel).

Harvest Oil repeatedly asserts in its summary judgment motion that the platform on which Hernandez was allegedly injured was a fixed platform. *See, e.g.*, Dkt. No. 35 at 3, 5–6. It avers that it understands from Hernandez's counsel that Hernandez cannot pursue a Jones Act claim because he does not qualify for seaman status, *see id.* at 4, The only competent summary judgment evidence Harvest Oil cites to establish that the platform on which Hernandez was allegedly injured is a fixed platform, however, is the following passage from Hernandez's deposition.

> Q. And just to be clear, it's my understanding your accident happened that first day you got out onto the platform.
> A. Yes.

Dkt. No. 35 Ex. A at 118:6–9.

Viewed in the light most favorable to the non-movant, this evidence does not establish that the platform at which Hernandez was injured was a fixed platform. Although it has no duty to do so, the Court has reviewed Hernandez's deposition testimony, and throughout it, he describes the place at which he was injured as a platform unqualified by an adjective. *See id.* This evidence does not negate the possibility, then, that Hernandez was working, for example, on a floating platform or a jack-up rig.[6] *See Demette*, 280 F.3d at 498; *Fields*, 182 F.3d at 357. The pleadings in Harvest Oil's motion for summary judgment do not amount to competent summary judgment evidence. *See* FED. R. CIV. P. 56(c) (2010); Bernhard v. Richardson-Merrell, Inc., 892 F.2d 440, 442–43 (5th Cir. 1990) (explaining that averment of counsel in summary judgment motion "may have reflected common

---

[6] The parties also dispute whether Hernandez's injuries occurred on a platform group referred to as Main Pass 25 (MP25) or Main Pass 31 (MP31). Harvest Oil provides a daily project log which states that the repair crew to which Hernandez was assigned worked on MP31 on the day on which Hernandez was allegedly injured. Dkt. No. 50 Ex. A at 16. Hernandez has provided incident reports prepared by various employees who list MP25 in the location field. *See* Dkt. NO. 52 Ex. A–E. This dispute also prevents summary judgment on Hernandez's Jones Act claim because Harvest Oil has produced no evidence that either MP25 or MP31 is a fixed platform.

knowledge to counsel who were involved . . ., but it certainly did not qualify as controverting summary judgment evidence"); Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987).

Additionally, Harvest Oil's summary judgment evidence does not address the possibility that Hernandez may be entitled to seaman status because of his connection to another vessel or group of vessels. *See Fields*, 182 F.2d at 57. The Court expresses no opinion at this time concerning Hernandez's ultimate eligibility for seaman status under the Jones Act. Instead, the Court holds that Harvest Oil has failed to carry its summary judgment burden to show that no genuine dispute concerning an issue of material fact exists regarding Hernandez's seaman status and that it is entitled to judgment as a matter of law.

B.   *Longshore and Harbor Workers' Compensation Act claim*

Section 905(b) of the LHWCA provides in part that "[i]n the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party . . . ." 33 U.S.C. § 905(b) (2010). Harvest Oil requests summary judgment on Hernandez's LHWCA claim for two reasons. *See* Dkt. No. 50 Ex. A;[7] Dkt. No. 35 at 4-5. First, Harvest Oil avers that it has discovered that Hernandez was injured while working at a platform it does not own. *See generally* Dkt. No. 50. Second, Harvest Oil asserts the undisputed material evidence shows that it breached no duty it owed to Hernandez. *See* Dkt. No. 35 at 9-10.

Section 905(b) authorizes third-party negligence actions against a vessel owner for the vessel's negligence. *See* 33 U.S.C. § 905(b) (2010); McLaurin v. Noble Drilling, 529 F.3d 285, 289 (5th Cir. 2008). Only after determining that a claimant has alleged facts sufficient to establish a maritime tort does the Court turn to the specific elements of a cause of action under Section 905(b). *McLaurin*, 529 F.3d at

---

[7]   The Court refers to the exhibits to Harvest Oil's motion to dismiss, Dkt. No. 50, as labeled by Harvest Oil. These labels differ by one letter from those used in the Court's Electronic Case Filing System (ECF) because Harvest Oil's Memorandum in Support of its Motion to Dismiss is identified as Exhibit A in the ECF.

289–90. These include: "(1) the involvement of a vessel, (2) the negligence of the vessel, and (3) other subsidiary issues, such as the identity of the vessel owner." *Id.* at 290 (citing May v. Transworld Drilling Co., 786 F.2d 1261, 1264 (5th Cir. 1986)) (other citations omitted). Consequently, the factual dispute the Court has already described concerning whether the platform on which Hernandez was allegedly injured is a vessel also precludes summary judgment on Hernandez's LHWCA claim. *See supra* at 6–7.

The Court also finds that a material factual dispute exists concerning ownership of the platform on which Hernandez was injured. *See id.* Harvest Oil does not dispute that it owns a group of oil drilling platforms known collectively as Main Pass 25 (MP25). *See* Dkt. No. 50 Ex. B (affidavit of Roger P. Pecoraro). However, it has produced uncontested evidence that it does not own another group of platforms referred to collectively as Main Pass 31 (MP31). *See id.* Harvest Oil submits a daily project log showing that the crew to which Hernandez was assigned performed repairs exclusively on MP31 on September 29, 2007, the date on which Hernandez alleges that he was injured. *See* Dkt. No. 50 Ex. 3 to Ex. A at 1; Dkt. No. 10 at 2.

In response, Hernandez tenders several incident reports prepared and signed by other workers present on September 29, 2007.[8] *See* Dkt. No. 52 Ex. A–E. Each of these incident reports lists "MP25" in the location field.[9] *Id.* After reviewing these exhibits, the Court finds that they are sufficient to raise a question of material fact as to the place at which Hernandez was injured.[10]

Harvest Oil also argues that the undisputed evidence shows that it breached no duty it owed to Hernandez under Section 905(b) even if it owned the platform on

---

[8] According to their date fields, these incident reports were prepared on September 30, 2007, the day after Hernandez was allegedly injured.

[9] The second digit of the location number on the incident report of Robert Zawicky is illegible. Dkt. No. 50 Ex. A at 1. The number two, however, appears as the first digit. *See id.*

[10] Hernandez also complains that Harvest Oil should have raised this defense earlier in litigation. *See* Dkt. No. 52 at 1. Harvest Oil replies that it did not become aware of this issue until after the filing of its summary judgment motion. *See* Dkt. No. 50 at 3. Hernandez cites no authority entitling him to estoppel, so the Court need not address this argument. However, the Court notes that Harvest Oil uniformly referred to Main Pass 25 in its original summary judgment motion filed on March 31, 2010. *See* Dkt. No. 35 at 2, 6.

9

which he was injured. *See* Dkt. No. 42 at 5. Though they dispute the scope of their duties, the parties assume that the Supreme Court's decision in *Scindia Steam Navigation Co. v. de los Santos*, 451 U.S. 156 (1981), furnishes the basis for determining Harvest Oil's duties in this case.[11] *See, e.g.*, Dkt. No. 35 at 7; Dkt. No. 42 at 5. This depends on the location of and vessel status of the platform on which Hernandez was allegedly injured. *See* Fontenot v. Dual Drilling Co., 179 F.3d 969, 974 (5th Cir. 1999) (holding that employee could not maintain Section 905(b) claim against fixed oil platform because platform was not vessel). If the platform is located on the outer continental shelf, the duty determination may be governed by substantive state law adopted as federal law by the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. §§ 1331, 1333. In that case, state law would apply to this suit to the extent it is not inconsistent with federal law. *See* § 1333(b); *Demette*, 280 F.3d at 496–98 (explaining the situs and status test necessary for the OCSLA to apply); Dozier v. Rowan Drilling Co., Inc., 397 F. Supp. 2d 837, 853–54 (S.D. Tex. 2005) (applying state negligence law to platform to extent consistent with federal law in Section 905(b)). If the platform was located in a state's territorial waters and was not a vessel, then the evidence before the Court suggests that it was likely located in the territorial waters of a state[12] in which case state law would apply. *See, e.g.*, Kelly v. Bass Enters. Prod. Co., 17 F. Supp. 2d 591, 596–97, 599 (E.D. La. 1999) (applying state law to personal injury actions when injury occurred in state's territorial waters).

As the foregoing demonstrates, the absence of summary judgment evidence of the place at which Hernandez suffered his alleged injuries precludes the Court from deciding what substantive law should be applied to Hernandez's negligence claim.

---

[11] *Scindia* established that a vessel owner may generally be liable to a longshoreman or stevator under Section 905(b): (1) for failing to warn the stevator of hidden defects in the vessel of which the vessel owner should have known; (2) for injury caused by hazards under the control of the vessel; and (3) for failing to intervene in the stevator's operations when the owner has actual knowledge of the hazard and that the stevator, in the exercise of obviously improvident judgment, means to work on in the face of it and cannot be relied on to remedy the condition. Robinson v. Orient Marine Co., Ltd., 505 F.3d 364, 365 (5th Cir. 2007) (citing Pimental v. Ltd. Canadian Pac. Bul., 965 F.2d 13, 15 (5th Cir. 1992)).

[12] *See* Dkt. No. 50 Ex. B at 1–2 (describing MP25 and MP31 using Louisiana state lease numbers).

The parties have briefed only one of the possibilities, and the Court declines to undertake the task of determining without the briefing of the parties Hernandez's duties under the law of an unknown state as potentially modified by OCSLA analysis. Instead, the Court finds that Harvest Oil has failed to meet its burden to show that no dispute exists concerning a genuine issue of material fact on this claim as well.

## IV. Conclusion

For the foregoing reasons, the Court **DENIES** Defendant Harvest Oil & Gas, LLC's Motion for Summary Judgment, Dkt. No. 35, and Motion to Dismiss, Dkt. No. 50. The Court **GRANTS** Plaintiff's Unopposed Motion to Strike Affidavit of Martin Sanders, Dkt. No. 40. The Court **ORDERS** this Affidavit, Dkt. No. 35 Ex. D. **STRUCK**.

DONE at Brownsville, Texas, on September 23, 2010.

_____
Hilda G. Tagle
United States District Judge